HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN SKVORAK, JUSTIN LIPSON,
LARRY SMITH, KIMBERLY KREUTZER,

Plaintiffs,

v.

THURSTON COUNTY, et al.,

Defendants.

Case No. C05-5100 RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon the Thurston County Defendants' Second Motion for Summary Judgment [Dkt. #74].

Having considered the entirety of the records and file herein, the Court rules as follows:

Thurston County, Thurston County Sheriff's Office, and individual sheriff's deputies (and spouses) (hereinafter "defendants") bring this motion seeking summary judgment against all four plaintiffs on plaintiffs' two remaining causes of action under 42 U.S.C. § 1983.[1] Plaintiffs Skvorak, Lipson and Smith allege that defendants violated their rights under the First, Fourth, Fifth and Eighth Amendments[2] to the United States

---

[1] Plaintiffs state law claims were previously dismissed by Order dated February 25, 2006 [Dkt. #53].

[2] It is unclear exactly what constitutional grounds plaintiffs rely upon for their claims. The face of the complaint lists the First, Fourth, Fifth, Eighth and Ninth Amendments. Complaint, ¶ 1, Dkt. #1. In the body of the complaint, plaintiffs state: "This action is brought pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution . . . ." Complaint, p. 8, ¶ 1.19, Dkt. #1. In various allegations throughout the complaint, plaintiffs indicate that the action is brought pursuant to the First, Fourth, Fifth and Eighth Amendments; or, the First, Fourth, Fifth and Fourteenth Amendments. See Complaint pp. 15-17, ¶¶ 4.3, 4.4, 4.8, and 4.9.
  As an initial matter, the Eighth Amendment's protection against cruel and unusual punishment is inapplicable to these

ORDER
Page - 1

1  Constitution when defendant deputies arrested plaintiffs during a protest on private property in Thurston
2  County. Plaintiff Kreutzer alleges only that the force used to arrest her was unreasonable.[3] For the reasons
3  set forth below, defendants' motion is granted and plaintiffs' complaint is dismissed.

### FACTS

5  On July 8, 2002 more than two dozen people[4] gathered on property owned by Quality Rock Products.
6  They were present to protest the construction of a natural gas pipeline that was being built on or near rivers,
7  wetlands and other environmentally sensitive areas. Complaint, ¶¶ 2.7, 2.9. Plaintiff Kreutzer actively
8  participated in the demonstration by chaining herself to a piece of drilling equipment. Plaintiffs Skvorak,
9  Lipson and Smith claim they were there only as members of the press reporting and videotaping the
10 demonstration and arrests.

11  At approximately 5:45 a.m. Deputy Brady was dispatched to Quality Rock Products based upon a
12 report that six protestors were on Quality Rock property. He and another deputy encountered the individuals
13 on the county road to the property and informed them that they would be trespassing if they entered private
14 property, but could stand by the side of the road and display their signs. Brady Dec., ¶ 2, Dkt. #79. At
15 approximately 7:00 a.m. Deputy Brady and Lt. Ware were contacted by employees of the Michels Corporation
16 who had arrived to begin work. The employees indicated that there were protestors gathering on a private
17 road at the work site and gathering on and around their construction equipment. Brady Dec., ¶ 3, Dkt. #79
18 and Ware Dec., ¶ 2, Dkt. #78. At approximately 8:00 a.m. the owner of the property provided the sheriff's
19 officers with a statement that indicated he wanted the protestors removed from his property. Brady Dec.,

---

plaintiffs. The Eighth Amendment's prohibition against cruel and unusual punishment applies only to those convicted of a crime. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Soto v. City of Sacramento*, 567 F.Supp. 662, 671 (E.D. Cal. 1983). Plaintiffs were never convicted of any crime, in fact, all charges against them were dismissed. Any claims under the Eighth Amendment must be dismissed.

Although never explicitly articulated in the body of the complaint, any claims plaintiffs may assert under the Ninth Amendment must also be dismissed. The Ninth Amendment does not provide an independent basis for a claim under 42 U.S.C. § 1983. *See Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986).

[3]It is also unclear whether or not plaintiff Kreutzer is asserting First Amendment protections as a journalist. Initially, the complaint states that plaintiff "Kreutzer was a journalist." Complaint, p. 4, ¶ 1.9. However, several allegations later the complaint alleges that Kreutzer was a "participant," ¶ 2.5, an "environmental activist," ¶ 2.10, and "a participant in the demonstration in question." ¶ 2.20. However, plaintiff's status as a "participant" or member of the press does not affect the outcome of this case.

[4]The Court has estimated the number of people present at the scene based upon a review of the DVD of the protest and arrests submitted as Exh. B to the Declaration of Sergeant Gordon Phillips [Dkt. #'s 75 and 85].

ORDER
Page - 2

1  Exh. E, Dkt. #79.

2       Lt. Ware and several other deputies approached the protestors at approximately 9:30 a.m. and Lt. Ware advised them that they were trespassing on private property, that the property owner wished them to leave, that they may leave voluntarily with no adverse consequences but that if they failed to leave they <u>may</u> be subject to arrest. <u>Brady Dec., ¶ 7, Dkt. #79; Ware Dec., ¶ 4, Dkt. #78; Rudloff Dec., ¶ 2, Dkt. #80; and, Phillips Dec., Exh. B, Dkt. #85</u>. Lt. Ware advised the protestors again approximately twenty-five minutes later that if those gathered fail to leave, they <u>may</u> be subject to arrest. <u>Id</u>. At approximately 11:00 a.m. Lt. Ware and several deputies again approached the protestors and informed them that it was now time to leave the property and that if they did not, they would be arrested. <u>Complaint, ¶ 2.13, Dkt. #1; Ware Dec., ¶ 7, Dkt. #78; and Rudloff Dec., ¶ 5, Dkt. #80</u>.

     All four plaintiffs were arrested and charged with criminal trespass in the second degree. Smith was arrested without incident. <u>Brady Dec., ¶ 10, Dkt. #79</u>. Lipson's and Skvorak's arrest involved a struggle, and they were both also charged with resisting arrest. <u>Lipson Dec., ¶ 11, Dkt. #101; Skvorak Dec., ¶ 13, Dkt. #101; and, Brady Dec., Exh. F, Dkt. #79</u>. Kreutzer had to be cut free from a metal pipe which she had used to chain herself to a piece of drilling equipment. <u>Phillips Dec., ¶ 7, Exh. B, Dkt. #'s 75 and 85</u>. She was charged also with obstruction. <u>Brady Dec., Exh. F, Dkt. #79</u>. Charges against all four plaintiffs were later dismissed. <u>Complaint, ¶ 2.19, Dkt. #1</u>. This lawsuit followed.

## SUMMARY JUDGMENT STANDARD

     Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from

which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## ANALYSIS

The defendants seek summary judgment as to plaintiffs' remaining claims arguing that they are immune from liability based upon the well-established doctrine of qualified immunity. Defendants in a § 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id*.

Plaintiffs allege the following constitutional rights were violated by the arrests: (a) the right not to be deprived of liberty without due process of law; (b) the right to be free from invasion or interference with Plaintiffs' zone of privacy; (c) the right to freedom of speech; (d) the right to freedom of association; (e) the right to equal protection of the law; (f) the right to petition the government for a redress of grievances; (g) the right to be free from police use of excessive force; (h) the right to be free from discriminatory law enforcement; (i) the right to be free from unreasonable search and seizure; and (j) the right to Freedom of the Press. Complaint, ¶ 4.2, Dkt. #1. The gist of plaintiffs' claimed violations of their rights is they were arrested without probable cause, the force used to arrest them was unreasonable, and they were arrested because they were exercising their First Amendment rights as members of the press.

The first determination that must be made is whether (viewed in the light most favorable to the party asserting the injury) the facts show that the sheriff's deputies' conduct violated a constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194 (2004). Under Washington law, a police officer may arrest an individual when he has probable cause to believe that a misdemeanor (in this case criminal trespass in the second degree) is being committed in his presence. RCW 10.31.100. A person is guilty of criminal trespass in the second degree if he or she enters or remains unlawfully on private property not constituting a building. RCW 9A.52.080; *State v. Brittain*, 38 Wash. App. 740 (Div. III 1984). Probable cause to arrest exists if "the facts and circumstances within [the deputies'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiffs] had committed or [were] committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The arrests of all four plaintiffs[5] were supported by probable cause. The undisputed facts show that plaintiffs, in the presence of the arresting deputies, remained unlawfully on private property not constituting a building. RCW 9A.52.080. Plaintiffs Skvorak, Lipson, and Kreutzer were on the property and heard Lt. Ware's three warnings that they were trespassing, that the owner wished them to leave, and that they may/would be subject to arrest. Plaintiff Smith arrived after the initial two warnings but was present before the third warning was issued and approximately ten minutes before the arrests began. Smith Dec., ¶ 3, Dkt. #101.

Plaintiffs Skvorak, Lipson and Smith argue that they were complying with the deputies' order to leave, and had left the property when they were chased down and arrested. However, the owner of the property, in his sworn declaration, states that after review of the videotapes submitted as Exh. B to the Phillips Declaration, the plaintiffs were on Quality Rock Products property when arrested. DeAtley Dec., ¶ 4, Dkt. #104. Plaintiffs' position that they had left the property is merely based upon their own self-serving declarations, is not supported by independent evidence, and is directly refuted by the sworn declaration of the owner of the property. Therefore, the plaintiffs have failed to meet their burden to show that a genuine issue exists as to whether they had left the property when arrested. *Celotex Corp.*, 477 U.S. at 324.

Plaintiffs also argue they were members of the press[6] and were thus entitled to special

---

[5]Plaintiff Kreutzer does not challenge the existence of probable cause for her arrest. Plaintiffs' Response, p. 9, Dkt. #101.

[6]See fn. 3.

consideration. Plaintiffs are mistaken. The press has "no special privilege to invade the rights and liberties of others[.]" *Branzburg v. Hayes*, 408 U.S. 665, 683 (1972), and "[t]he First Amendment is not a license to trespass . . . ." *Dietermann v. Time, Inc.,* 449 F.2d 245, 249 (9th Cir. 1971). The owner of the property had not given plaintiffs permission to be on the property, whether they were members of the press or not. DeAtley Dec., ¶ 3, Dkt. #104. Thus any claims they have that they were arrested without probable cause must fail.

The plaintiffs[7] also argue the deputies used excessive force when arresting them. Initially, plaintiff Kruetzer's claim must be dismissed because she has failed to present by way of affidavit, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; Fed. R. Civ. P. 56(o). Skvorak alleges he was chased down and tackled, Skvorak Dec., ¶ 13, Dkt. #101, and did not resist arrest Id., ¶ 15. Lipson alleges he was chased after, grabbed and violently tackled, Lipson Dec., ¶¶ 21 and 22, Dkt. #101, and did not resist arrest. Id., ¶ 23. However, Skvorak and Lipson do not allege they suffered any injuries as a result of their arrests. See also Brady Dec.,¶ 12, Dkt. #79 ( "During booking, I walked past the protestors a number of times and at no time did anyone indicate that they were injured and wanted medical attention.")

The Ninth Circuit has set forth the analysis this Court must undertake when faced with an excessive force claim:

> In considering the first step of *Saucier's* two-step qualified immunity inquiry, we must determine whether plaintiffs' constitutional right to be free from excessive force was violated. Under the Fourth Amendment, officers may only use such force as is "objectively reasonable" under the circumstances. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To determine whether the force used was reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (citations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

---

[7]Plaintiff Smith does not allege excessive force.

ORDER
Page - 6

> In addition, the court's consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97, 109 S.Ct. 1865. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. 1865 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).
>
> In evaluating the nature and quality of the intrusion, we must consider "the type and amount of force inflicted" in arresting plaintiffs. *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994).

*Jackson v. City of Bremerton*, 268 F.3d 646, 652-53 (9th Cir. 2001)(footnote omitted). Plaintiffs allege they were grabbed and tackled to the ground. This Court's review of the DVD submitted refutes plaintiffs' allegations. The video taken by Plaintiff Lipson shows the arrest of Plaintiff Skvorak. It shows Skvorak with a video camera, shows a sheriff's deputy attempt to grab Skvorak, Skvorak pull away and then be taken to the ground in a very controlled manner and handcuffed. As for the arrest of Plaintiff Lipson, the video shows Lipson being told to leave, starting to leave and then advancing back towards a deputy who was arresting another protestor. When the deputies moved back towards Lipson, he ran, was chased, caught, and was taken to the ground and handcuffed. Contrary to Lipson's declaration, the take down was no more violent than appears necessary to control a person fleeing from arrest. Significantly, Plaintiffs Skvorak and Lipson allege no injuries from this encounter. Viewed in the light most favorable to plaintiffs, this amount of intrusion upon plaintiffs' Fourth Amendment interest can only be described as "minimal." *Id.* at 653.

The Court must next "balance [plaintiffs'] alleged intrusions' upon their Fourth Amendment interests "against the governmental interests at stake." *Id.* The evaluation involves the consideration of factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). The governmental interest in this case is not as great as in others. The crime was only a misdemeanor. However, a review of the DVD submitted and previously cited shows the deputies were outnumbered by the protestors. When the protestors did not leave when ordered, the deputies were forced to make a decision to begin arrests and take control of the situation. The ensuing arrests of Skvorak and Lipson as captured on the DVD were effectuated with minimal struggle.

This Court, in applying the *Graham* analysis, concludes that the amount of force used to arrest plaintiffs Skvorak and Lipson was "objectively reasonable."[8]

Plaintiffs also allege their arrests were in retaliation for the exercise of their rights under the First Amendment. Plaintiffs point to nothing in the record which supports this allegation. It is not supported by any depositions, requests for admissions or answers to interrogatories. The allegation is merely made in plaintiffs' self-serving declarations. There needs to be more than a "mere scintilla of evidence" to defeat a motion for summary judgment, *Triton Energy Corp.*, 68 F.3d at 1221, and plaintiffs have failed to offer evidence from which a reasonable jury could return a verdict in their favor. *Id*. at 1220.

Therefore, Defendants' Second Motion for Summary Judgment [Dkt. #74] is **GRANTED**. All other pending motions are **DISMISSED**. The Clerk is directed to enter judgment for the defendants.

**IT IS SO ORDERED.**

The Clerk shall send uncertified copies of this order to all counsel of record, and to any party appearing pro se.

Dated this 15th day of September, 2006.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[8]*Cf. Jackson v. City of Bremerton, supra.* (Plaintiff sprayed with a chemical irritant, pushed to the ground by three officers, handcuffed, roughly pulled to her feet, and placed in a patrol car with the windows rolled up and engine running in July heat was not subject to excessive force in violation of the Fourth Amendment.)